1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WARRINGTON PARKER (SBN 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     415 773 5700
Facsimile:      415 773 5759

*Attorneys for Defendant*
*NEXTracker, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ROGER B. SCHAGRIN, <br><br> Relator, <br><br> v. <br><br> NEXTRACKER, INC. <br> Defendant. | Case No. C 17-2048 WHA <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT, OR, IN THE ALTERNATIVE, REQUEST FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Complaint:** April 12, 2017 <br> **Complaint Unsealed:** December 12, 2017 <br> **CMC:** April 26, 2018 <br><br> Date:       April 26, 2018 <br> Time:       8:00 a.m. <br> Judge:      Honorable William Alsup <br> Dept.:       Courtroom 12, 19th Floor |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ................................................................................................ 1

STATEMENT OF RELIEF SOUGHT ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

PRELIMINARY STATEMENT.................................................................................. 2

STATEMENT OF FACTS .......................................................................................... 3

I.      THE PARTIES AND NATURE OF DISPUTE. ........................................... 3

II.     RELEVANT ALLEGATIONS OF COMPLAINT. ....................................... 4

III.    THE GOVERNMENT HAS BEEN AWARE THAT NEXTRACKER IS NOT
        PAYING DUTIES, AND NEXTRACKER'S REQUEST FOR A DEFINITIVE
        DECISION ON THIS POINT IS CURRENTLY PENDING BEFORE THE
        GOVERNMENT................................................................................................... 5

        A.      The CBP Rejects The Allegation Of Duty Evasion Filed By Relator. ............ 5

        B.      NEXTracker Has Requested That DOC Confirm That The Imports At Issue
                Are Not Dutiable. .......................................................................................... 6

ARGUMENT ................................................................................................................. 7

I.      SUMMARY OF ARGUMENT. ........................................................................ 7

II.     THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO THE
        GOVERNMENT ACTION BAR AND THE PUBLIC DISCLOSURE BAR.............. 8

        A.      Relator's Complaint Should be Dismissed Pursuant To The Government
                Action Bar. .................................................................................................... 8

        B.      Relator's Complaint Should Be Dismissed Pursuant to the Public
                Disclosure Bar. .............................................................................................. 9

                1.      Relator's Complaint Relies on Allegations or Transactions That
                        Were Publicly Disclosed. .................................................................... 9

                2.      Relator Does Not Fall Within The Exceptions To The Public
                        Disclosure Bar. ................................................................................ 11

III.    RELATOR'S COMPLAINT SHOULD BE DISMISSED UNDER RULES 8, 9(B)
        AND 12(B)(6) FOR FAILURE TO STATE A CLAIM................................................. 13

        A.      Relator's Complaint Fails to Meet Rule 9(b) Pleading Standards. ....................... 13

        B.      The Complaint alleges No facts from which scienter can be inferred failing
                rule 8 pleading requirements. ........................................................................ 14

IV.     IN THE ALTERNATIVE, THE COURT SHOULD STAY RELATOR'S
        COMPLAINT UNDER THE PRIMARY JURISDICTION DOCTRINE. ....................... 16

CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*,
    186 F. Supp. 2d 458 (S.D.N.Y.), *aff'd*, 53 F. App'x 153 (2d Cir. 2002) ................................. 12

*United States ex. Rel. Bennett v. Biotronik, Inc.*,
    No. 2:14-CV-02407-KJM-EFB, 2016 WL 1587215 (E.D. Cal. Apr. 20, 2016),
    *aff'd.* 876 F.3d 1011 (9th Cir. 2017) ................................................................................. 8

*United States ex rel. Bennett v. Biotronik, Inc.*,
    876 F.3d 1011 (9th Cir. 2017) ........................................................................................... 7

*United States ex rel. Buckley v. Hill Cox Corp.*,
    No. 12-CV-6102, 2014 WL 4425800 (W.D. Ark. Sept. 9, 2014) ...................................... 9

*United States ex rel. Cafasso v. General Dynamics C4 Systems*,
    637 F.3d 1047 (9th Cir. 2011) .................................................................................. 13, 145

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ......................................................................................... 16

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
    No. 13-2983, 2014 WL 4375638 (E.D. Pa. Sept. 4, 2014) ............................................. 11

*Davel Commc'ns, Inc. v. Qwest Corp.*,
    460 F.3d 1075 (9th Cir. 2006) ......................................................................................... 16

*United States ex rel. Doe v. Staples*,
    773 F.3d 83 (D.C. Cir. 2014) ..................................................................................... 10, 11

*United States ex rel. Doe v. Staples, Inc.*,
    932 F. Supp. 2d 34 (D.D.C. 2013), *aff'd*, 773 F.3d 83 (D.C. Cir. 2014) .................. 10, 11, 12

*Found. For Fair Contracting, Ltd. v. G & M E. Contracting & Double E, LLC*,
    259 F. Supp. 2d 329 (D.N.J. 2003) ................................................................................... 8

*Hagood v. Sonoma County Water Agency*,
    81 F.3d 1465 (9th Cir. 1996) ........................................................................................... 10

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*,
    352 F.3d 908 (4th Cir. 2003) ........................................................................................... 15

*United States ex rel. Hendow v. Univ. of Phoenix*,
    461 F.3d 1166 (9th Cir. 2006) ................................................................................... 14, 16

*United States ex rel. Hochman v. Nackman*,
    145 F.3d 1069 (9th Cir. 1998) ......................................................................................... 14

*In re Int'l Rectifier Corp. Litig.*,
  2008 WL 4555794 (C.D. Cal. May 23, 2008) ........................................................... 15

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ..................................................................................... 10

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) ..................................................................................... 14

*United States ex rel. Kraxberger v. Kansas City Power & Light Co.*,
  756 F.3d 1075 (8th Cir. 2014) ................................................................................... 11

*United States ex rel. Modglin v. DJO Global Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO
  Global, Inc.,* 678 F. App'x 594 (9th Cir. 2017) ........................................................ 15

*California ex rel. Mueller v. Walgreen Corp.*,
  175 F.R.D. 631 (N.D. Cal. 1997) .......................................................................... 13, 14

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ......................................................................................... 13

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
  54 F.3d 1424 (9th Cir. 1995) ..................................................................................... 15

*United States ex rel. Ondis v. City of Woonsocket*,
  587 F.3d 49 (1st Cir. 2009) ....................................................................................... 12

*Prather v. AT&T, Inc.*,
  847 F.3d 1097 (9th Cir. 2017) ............................................................................. 10, 12

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  563 U.S. 401 (2011) ................................................................................................... 11

*United States ex rel. Silver v. Omnicare, Inc.*,
  222 F. Supp. 3d 391 (D.N.J. 2016) ............................................................................ 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ......................................................................... 5

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins.
  Co.*, 944 F.2d 1149 (3d Cir. 1991) ............................................................................. 10

*Sunpreme, Inc. v. United States*,
  145 F. Supp. 3d 1271 (Ct. Int'l Trade 2016) ............................................................. 17

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................................... 5

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997)................................................................................13

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011)..........................................................................14, 15

*United States v. Dan Caputo Co.*,
  152 F.3d 1060 (9th Cir. 1998)..............................................................................16

*United States v. Honeywell Int'l, Inc.*,
  2014 WL 12579803 (C.D. Cal. Jan. 24, 2014) .....................................................15

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003)..................................................................................6

*United States v. Scan Health Plan*,
  2017 WL 4564722 (N.D. Cal. Oct. 5, 2017) .........................................................15

*United States v. Science Applications Int'l Corp.*,
  626 F.3d 1257 (D.C. Cir. 2010) ............................................................................15

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016)..........................................................................13, 14

*United States v. Univ. of Phoenix*,
  No. 2:10-CV-02478-MCE-KJ, 2014 WL 3689764 (E.D. Cal. July 24, 2014) ........12

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956)................................................................................................16

*Wichansky v. Zoel Holding Co. Inc.*
  No. CV-13-01924-PHX-DGC, 2014 WL 6633513 (D. Ariz. Nov. 24, 2014),
  *rev'd and remanded on other grounds*, 702 F. App'x 559 (9th Cir. 2017) ...............9

**Statutes**

31 U.S.C.
  Section 3729(a)(1)(A) ...........................................................................................14
  Section 3729(a)(1)(G) ...........................................................................................14
  Section 3730(e)(3)...............................................................................................7, 8
  Section 3730(e)(4)................................................................................................10
  Section 3730(e)(4)(A) ..........................................................................7, 9, 10, 11
  Section 3730(e)(4)(B) ...........................................................................................11

**Rules & Regulation**

19 C.F.R.
  Section 103.31(a) ..................................................................................................11
  Section 103.31(e) ..................................................................................................11
  Section 351.225.....................................................................................................16

Fed. R. Civ. P.
    Rule 8 ............................................................................................................ *passim*
    Rule 9 .................................................................................................................... 14
    Rule 9(b)......................................................................................................... *passim*
    Rule 12(b)(1)............................................................................................................ 1
    Rule 12(b)(6)............................................................................................................ 1

**Other Authorities**

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China;*
    *Notice of Amended Final Affirmative Countervailing Duty Determination and*
    *Notice of Countervailing Duty Order*, 73 Fed. Reg. at 42, 545 (July 22, 2008)................... 4, 5

*Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe*
    *from the People's Republic of China*, 73 Fed. Reg. at 42,547 (July 22, 2008)...................... 4, 5

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81
    Fed. Reg. 56477 (Aug. 22, 2016) ................................................................................ 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 26, 2018, at 8:00 am or as soon thereafter as the matter may be heard before the United States District Court for the Northern District of California, Defendant NEXTracker, Inc. ("NEXTracker") will and hereby does move this Court, pursuant to Rules 8, 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing each claim in the Complaint of Plaintiff-Relator Roger B. Schagrin ("Relator"). The Complaint alleges violations of the False Claim Act, 31 U.S.C. § 3729, *et seq.*, but these violations are not pleaded with particularity.  Moreover, the claims in the complaint are barred by the False Claims Act statute.  Therefore, the Complaint should be dismissed pursuant to Rule 8, Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6).

In the alternative, NEXTracker seeks an order staying the case pursuant to the primary jurisdiction doctrine.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the Request for Judicial Notice filed herewith, the Declaration of Warrington Parker, all pleadings, records and papers on file in this action, and such other and further oral argument or documentary evidence as may be presented at or before the hearing.

### STATEMENT OF RELIEF SOUGHT

NEXTracker by this motion seeks dismissal of the Complaint or, alternatively, a stay of all proceedings.

Motion to Dismiss Complaint
Case No.: CV-17-2048 WHA

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

### PRELIMINARY STATEMENT

3       Relator Roger B. Schagrin ("Relator") claims that NEXTracker, Inc. ("NEXTracker") has

4   unlawfully failed to pay antidumping and countervailing duties on its imports from China of what

5   Relator alleges to be circular welded pipe in violation of the False Claims Act ("FCA").

6       Prior to the April 2017 filing of Relator's Complaint, however, the U.S. Customs and

7   Border Protection ("CBP") knew that NEXTracker was not treating the imports at issue as

8   dutiable.  In 2016, Relator already filed an allegation with the CBP on behalf of Wheatland

9   Tubing Company ("Wheatland") making the same allegations that are outlined in the Complaint.

10  The government has already been made aware of this issue, and Relator should not get a second

11  bite at the apple.  The government action bar renders this Court without jurisdiction.

12      Another bar prevents consideration of this Complaint: the public disclosure bar.  As

13  Relator admits in his Complaint, his claims are based on a compilation of publicly available

14  information.  A FCA claim is barred when that is the case.  The FCA is intended to incentivize

15  the pursuit of claims that could not be discovered, not claims that are based on information that

16  has been or can be gathered from public sources.

17      Separately, the Complaint fails to meet Rule 9(b) and Rule 8 pleading standards.  With

18  regard to Rule 9(b), Relator asserts on "information and belief" that NEXTracker's imports are

19  subject to, and not excluded from, antidumping and countervailing duties.  However, Relator

20  provides no factual basis for these "information and belief" allegations.  Rule 9(b)'s heightened

21  pleading requirements—which apply to the FCA claims—mandate that there be facts alleged that

22  indicate the bases for "information and belief" allegations.  That is missing here, and the

23  Complaint should be dismissed for this reason.

24      Rule 8 standards also require dismissal.  In order to be liable under the FCA, a defendant

25  must act with scienter, *i.e.*, *knowingly* act wrongly.  While scienter need not be pleaded with

26  specificity, a complaint must at the very least allege sufficient facts that would allow this Court to

27  draw a plausible inference that NEXTracker *knowingly* falsely designated its imports.  No such

28  facts are asserted.  The Complaint simply avers, based on "information and belief," that

1  NEXTracker falsely designated its imports.  Under the case law, that is not enough.

2        In addition, it does not suffice to allege that NEXTracker—a corporation—falsely

3  designated its imports.  Courts have rejected this type of "collective scienter theory."  Courts

4  require allegations that reflect that at least one corporate officer had the requisite scienter at the

5  time of the allegedly false statements.  No such allegations appear in the Complaint.

6        Finally, even before the Complaint was unsealed, NEXTracker had already filed a

7  Request for a Scope Ruling with the U.S. Department of Commerce ("DOC") to resolve

8  definitively the legal question of whether the imports at issue fall within the scope of the duty

9  orders in question. By statute, the DOC is the government agency tasked with making this

10 determination.  Under these circumstances, a stay is warranted under the primary jurisdiction

11 doctrine if this Court does not dismiss the claims.  A stay would allow the DOC to carry out its

12 statutory duties.  Moreover, should the DOC, as expected, find that the imports are not subject to

13 duties, this case is over.

14       In sum, the Complaint should be dismissed.  If the Court does not dismiss the Complaint,

15 this matter be stayed pending a determination from the DOC.

16                            **STATEMENT OF FACTS**

17 **I.    THE PARTIES AND NATURE OF DISPUTE**

18       ***Parties.***  Defendant NEXTracker designs, manufactures, builds, and services single-axis

19 solar power production trackers.  *See infra* at Section III, RJN Ex. 4.  In order to make these solar

20 panel tracking systems, NEXTracker has imported customized mechanical tubing components,

21 Torque Tubes,[1] from China.  *Id*; *see, e.g.*, Compl. ¶ 34.

22       Relator is a lawyer.  He and his law firm represent Wheatland Tube Company

23 ("Wheatland").  On Wheatland's behalf, Relator and his law firm have filed documents with the

24 CBP and the DOC alleging that certain NEXTracker's Torque Tubes are subject to duties, which

25

26 [1] The Complaint alleges that the products that are the subject of the NEXTracker imports at issue
   are "circular welded pipe."  NEXTracker understands that Relator is referring to what are actually
27 NEXTracker Torque Tubes.  If, for any reason, Relator fails to acknowledge this is so, Relator is
   compelled by Rule 9(b) to specifically identify the import that is at issue.  *See infra* at Section III,
28 A.

NEXTracker has allegedly been avoiding.  *See infra* at Section III, A & B.

 ***Nature of Dispute.***  The backdrop of Relator's FCA claim is the 2008 antidumping and countervailing duty ("AD/CVD") orders issued by DOC. Compl. ¶¶ 22-33.[2]  According to Relator, the AD/CVD orders provide that imports of circular welded pipes from China are subject to AD/CVD duties.  Compl. ¶¶ 25-26.  As acknowledged in the Complaint, there are stated exclusions to the scope of the orders, including an explicit exclusion for mechanical tubing. Compl. ¶ 38.

 According to Relator, NEXTracker has imported circular welded carbon pipe subject to the AD/CVD orders and failed to pay the required AD/CVD duties.

## II. RELEVANT ALLEGATIONS OF COMPLAINT

 Relator contends that between June 2014 and February 2017, NEXTracker falsely designated its imports from China of what Relator claims to be circular welded pipe subject to relevant AD/CVD duties, and that NEXTracker did not pay the required duties that are dictated by the AD/CVD orders.  Compl. ¶¶ 36, 42.

 Relator's contentions in this regard are based on "information and belief" and "public records."  Compl. ¶¶ 34, 35, 42.  According to Relator, public records indicate that NEXTracker imported from China approximately 73,000 metric tons of circular welded pipe from 2014 to February 2017.  Compl. ¶¶ 34, 35.  Based on these public records, Relator then approximates the value of the imports to arrive at an Average Unit Value, which he uses as a proxy for the actual value of NEXTracker's imports.  Compl. ¶ 42.  Relator then does some basic mathematical calculations—(Average Unit Value x the Antidumping and Countervailing duty case deposit requirement x the volume of NEXTracker's imports)—to arrive at the claimed AD/CVD duty amounts owed by NEXTracker.  Compl. ¶¶ 44-45.

 Relator's recitation of what appears in public records and his basic mathematical

---

[2] The Complaint does not identify the specific orders at issue.  NEXTracker understands that the orders at issue are A-570-910 and C-570-911.  *See Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 Fed. Reg. 42,545 (July 22, 2008).

MOTION TO DISMISS COMPLAINT
CASE NO.:  CV-17-2048 WHA

calculations assume that NEXTracker's imports *are* subject to AD/CVD orders.  As admitted by Relator, imports of mechanical tubing from China are not subject to those orders.  Compl. ¶¶ 36, 38; *see also Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 Fed. Reg. 42, 545 (July 22, 2008).

Relator's sole basis for asserting that NEXTracker's imports are subject to the AD/CVD orders is an allegation based on information and belief.  Compl. ¶ 36.  His sole basis for asserting that NEXTracker's imports are not subject to one of the exclusions is based on information and belief.  Compl. ¶ 38.  No factual basis for these information and belief assertions appears in the Complaint.

### III.    THE GOVERNMENT HAS BEEN AWARE THAT NEXTRACKER IS NOT PAYING DUTIES, AND NEXTRACKER'S REQUEST FOR A DEFINITIVE DECISION ON THIS POINT IS CURRENTLY PENDING BEFORE THE GOVERNMENT.

#### A.    The CBP Rejects The Allegation Of Duty Evasion Filed By Relator.

In September 2016, Relator filed with the CBP an Allegation of Duty Evasion on behalf of Wheatland under the Enforce and Protect Act of 2015 (Pub. L. 114-125) (the "EAPA").  Compl. ¶¶ 46-48; *see also* RJN Ex. 1.[3]

The EAPA Allegation tracks the allegations of the Complaint.  Relator, on behalf of Wheatland, alleged that NEXTracker's imports were "clearly within the scope of the [Anti-Dumping/Countervailing Duty] orders on [circular welded carbon quality steel pipe] from China."  *Id.* at 1-2.

In support of its EAPA Allegation, Relator attached public import data obtained from the subscription service Panjiva.  *Id.* at 3, Attachment.  Relator's law firm subsequently supplemented

---

[3] Because Relator makes reference to this filing and the CBP's determination in his Complaint, this Court may consider the documents in this section as incorporated by reference in the Complaint.  *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 n.7 (N.D. Cal. 2008).

its submission with additional public import data from Panjiva, as well as public import data from

the U.S. International Trade Commission's ("ITC") Dataweb and public import volumes from the

DOC Steel Import Monitoring and Analysis, showing the total amount of challenged items

imported.  RJN Ex. 2, Attachments 1-3.

On October 17, 2016, the CBP refused to initiate a duty evasion investigation, stating that

"[Wheatland] provided no evidence, beyond its mere supposition, to reasonably suggest that

NEXTracker's entries were made by a material false statement or act, or material omission, that

resulted in the reduction or avoidance of applicable AD/CVD cash deposits or other security."

RJN Ex. 3 at 2.

**B.     NEXTracker Has Requested That DOC Confirm That The Imports At Issue Are Not Dutiable.**

The DOC is the government agency responsible for determining whether a particular

product is covered by AC/CVD orders, including A-570-910 and C-570-911.  Before the

unsealing of the Complaint,[4] on November 3, 2017, NEXTracker submitted a scope ruling request

with the DOC, requesting confirmation that Torque Tubes fall outside the scope of AD/CVD

orders.  RJN Ex. 4.[5]

On November 17, 2017, Relator filed a response to NEXTracker's scope ruling request on

behalf of Wheatland, urging the DOC to reject NEXTracker's scope request without instituting a

formal scope inquiry because, Wheatland alleged, NEXTracker's Torque Tubes are subject to

AD/CVD orders and are not mechanical tubing.  RJN Ex. 5.

NEXTracker responded to Wheatland's submission on December 7, 2017.  RJN Ex. 6.

---

[4] The Complaint was filed under seal on April 12, 2017. (Dkt. 1).  It was not unsealed until December 12, 2017 (Dkt. 14), a full month after NEXTracker filed its scope ruling request with the DOC.  RJN Ex. 4.

[5] The documents referenced in this section are submitted in support of NEXTracker's request for a stay.  Moreover, they are judicially noticeable in the context of a Motion to Dismiss.  Courts may consider extrinsic evidence that is judicially noticeable. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider . . .  matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.); Request for Judicial Notice at 2-3.

On December 7, 2017, the DOC issued a questionnaire to NEXTracker to develop additional information.  RJN Ex. 7.  NEXTracker responded to the questionnaire on February 6, 2018.  RJN Ex. 8.

On March 12, 2018, NEXTracker submitted comments to DOC demonstrating NEXTracker's Torque Tubes are outside of the scope of orders A-570-910 and C-570-911.  RJN Ex. 9.

The scope ruling request remains pending before the DOC.

## ARGUMENT

## I.    SUMMARY OF ARGUMENT.

"[T]he right to bring *qui tam* suits is not absolute."  *United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1013 (9th Cir. 2017).  Here, two bars prevent Relator from sustaining this suit.  The lawsuit is barred by the government action bar, 31 U.S.C. § 3730(e)(3) (Section II, A).  The claims are also barred by the public disclosure bar.  31 U.S.C. § 3730(e)(4)(A).  Relator's claims are based on public information and mathematical calculations based on that public information.  The public disclosure bar prohibits FCA claims based on this publicly available information.  (Section II, B).

Independently, the Complaint should be dismissed because it fails to meet Rule 9(b) and Rule 8 standards.  With regard to Rule 9(b), the sole basis for Relator's claim that NEXTracker's imports are subject to duties is his "information and belief."  He provides no factual basis for those "information and belief" allegations in violation of Rule 9(b).  (Section III, A).

The Complaint fails to satisfy Rule 8.  A FCA complaint must allege facts that support a plausible inference of scienter, *i.e.*, that NEXTracker knowingly falsely designated its imports and knowingly failed to pay duties.  The facts alleged do not allow such an inference.  Moreover, because NEXTracker is a corporation, the Complaint must allege facts reflecting that at least one corporate officer had the requisite scienter.  The Complaint makes no such allegation.  (Section III, B).

Finally, even if the Complaint were not dismissed, the case should be stayed.  The DOC has before it NEXTracker's scope ruling request.  Relator, on behalf of Wheatland, has

1  responded.  If, as expected, the DOC confirms that NEXTracker imports fall outside of the scope

2  of AD/CVD orders, there would be no basis for Relator's claims.  (Section IV). [6]

3  **II.      THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO THE
       GOVERNMENT ACTION BAR AND THE PUBLIC DISCLOSURE BAR.**

4

5        **A.      Relator's Complaint Should be Dismissed Pursuant To The Government
              Action Bar.**

6        The government action bar is intended to prevent FCA lawsuits based on the same

7  allegations or transactions known to the government as a result of the government's having been

8  party to an a civil law suit or an administrative civil money penalty proceeding.  31 U.S.C. §

9  3730(e)(3).  It is intended to prevent parasitic FCA claims made by relators who do not expose an

10  alleged fraud, but merely parrot it.  *See United States ex rel. Bennett v. Biotronik, Inc.*, No. 2:14-

11  CV-02407-KJM-EFB, 2016 WL 1587215, at *8 (E.D. Cal. Apr. 20, 2016), *aff'd.* 876 F.3d 1011

12  (9th Cir. 2017) (collecting cases and discussing history); *Found. For Fair Contracting, Ltd. v. G*

13  *& M E. Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 335 (D.N.J. 2003) (citing cases).

14        As noted, in 2016, Relator, on behalf of Wheatland, filed an EAPA allegation with the

15  CBP claiming that NEXTracker was failing to pay duties on circular welded pipe imported from

16  China.  (Section III, B).   The CBP's assessment and disposition of the EAPA proceeding was an

17  "administrative civil money proceeding" for the purposes of the government action bar.

18  Although there is no Ninth Circuit guidance on what constitutes an administrative civil money

19  penalty proceeding, courts in other circuits interpret this term broadly, holding that it includes

20  agency investigations where the agency has the power to collect restitution or damages.  *Found.*

21  *For Fair Contracting, Ltd.*, 259 F. Supp. 2d at 335–38; *United States ex rel. Buckley v. Hill &*

22  *Cox Corp.*, No. 12-CV-6102, 2014 WL 4425800, at *2–4 (W.D. Ark. Sept. 9, 2014); *see also*

23  *Wichansky v. Zoel Holding Co.*, No. CV-13-01924-PHX-DGC, 2014 WL 6633513, at *3-4 (D.

24  Ariz. Nov. 24, 2014), *rev'd and remanded on other grounds*, 702 F. App'x 559 (9th Cir. 2017)

25

26  [6] Even if the DOC decides that NEXTracker's imports are subject to duties and that duties are
    owed for imports prior to the initiation of the scope request, this FCA claim would still be

27  deficient, assuming that the Complaint is not dismissed for the reasons given in this motion.
    Among other things, Relator would still need to prove that NEXTracker *knowingly* engaged in the

28  conduct alleged, *i.e.*, acted with scienter.

(noting that a Department of Labor investigation constitutes a pending administrative civil money penalty proceeding, contrary to a state agency investigation).

Here, the EAPA proceeding triggers the government action bar.  As its legislative history makes clear, the EAPA was implemented to "afford the parties an opportunity to participate in the investigation," and may lead to "the assessment of civil penalties against importers who evade [AD/CVD] orders."  *Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477 (Aug. 22, 2016).  Even though the CBP decided not to pursue civil money penalties (or even an investigation) based on the allegations Relator submitted on behalf of Wheatland, the fact that it could have done so if it found Wheatland's allegations credible is sufficient to bar future *qui tam* actions under the government action bar.  *Wichansky*, 2014 WL 6633513, at *3-4 (finding that Department of Labor investigation barred a subsequent *qui tam* lawsuit because DOL had the ability to set forth dispute procedures, to refer the matter for restitution or criminal measures, and to conduct investigations for which damages may be assessed).

Furthermore, the EAPA proceeding and the Complaint cover the same ground.  Both concern whether NEXTracker's imports are covered by AD/CVD orders.

> **B.**     **Relator's Complaint Should Be Dismissed Pursuant to the Public Disclosure Bar.**
>
> > **1.**     **Relator's Complaint Relies on Allegations or Transactions That Were Publicly Disclosed.**

Relator concedes that his factual allegations are based on "public records."  Compl. ¶¶ 34, 35, 39, 40, 42.  Use of publicly available information as the basis for a FCA claim warrants dismissal under the public disclosure bar.  *See* 31 U.S.C. § 3730(e)(4)(A).[7]

The public disclosure bar is properly invoked when a Relator takes available publicly

---

[7] Section 3730(e)(4)(A) provides that a court, "shall dismiss an action or claim" if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" (i) in a "Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;" (ii) in a "congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation;" or (iii) in the news media.

1    available information and asserts, as here, that that information supports a FCA claim.[8]  This is

2    true even if the public information is gathered from different sources.  The reason for this is as

3    follows: *qui tam* suits are not needed where the information is "in the public domain" and "the

4    government has presumably has chosen not to pursue a suit."  *United States ex rel. Doe v. Staples,*

5    *Inc.*, 932 F. Supp. 2d 34, 39-40 (D.D.C. 2013), *aff'd*, 773 F.3d 83 (D.C. Cir. 2014) (citation

6    omitted); *see also United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential*

7    *Ins. Co.*, 944 F.2d 1149, 1155-56 (3d Cir. 1991) (noting that Section 3730(e)(4) was "designed to

8    preclude *qui tam* suits based on information that would have been equally available to strangers to

9    the fraud transaction had they chosen to look for it as it was to the relator").

10       Thus, in *United States ex rel. Doe v. Staples*, 773 F.3d 83, 86-87  (D.C. Cir. 2014), the

11   Court invoked the public disclosure bar to dismiss a FCA claim that was based on publicly

12   disclosed import data, which supplied certain of the information, and publicly available ITC

13   reports, which supplied the remaining data.  *See also Hagood v. Sonoma Cty. Water Agency*, 81

14   F.3d 1465, 1473 (9th Cir. 1996) (noting that the publicly disclosed facts need not be accompanied

15   by "an explicit allegation fraud"); *United States ex rel. Silver v. Omnicare, Inc.*, 222 F. Supp. 3d

16   391, 404 (D.N.J. 2016) (noting that the publicly available information when viewed together

17   provided sufficient information to the government to put it on the trail of fraud).

18       The next question is whether the documents referenced by Relator can be considered the

19   type of information that falls within the scope of section 3730(e)(4)(A).  They are.  Although

20   Relator does not identify the specific "public documents" on which he relies in the Complaint,

21   Relator's 2016 EAPA allegation identifies that data as having come from the subscription

22   services Panjiva, ITC Dataweb, and DOC Steel Import Monitoring and Analysis.  *See* RJN Exs. 1

23   & 2.

24       Import manifest information, including that which has been collected and made available

---

[8] The public disclosure bar is an affirmative defense.  *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017).  However, the argument here is based on the allegations of the Complaint and the 2016 EAPA filings of Relator, which filings are properly considered as they are referenced in the Complaint.  *See supra* at n.4.  As such, the public disclosure bar is properly considered on a motion to dismiss.  *See, e.g., Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

MOTION TO DISMISS COMPLAINT
CASE NO.:  CV-17-2048 WHA

to the public for purchase, is considered to be publicly disclosed either as news media[9] or administrative reports. *See United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-2983, 2014 WL 4375638, at *10 (E.D. Pa. Sept. 4, 2014) (holding that "the manifest data that CFI obtained from Zepol [which] is collected and made available for purchase to both the press and the public by CBP itself" was public). Shipping data obtained from reports meet Section 3730(e)(4)(A)'s standards. *Staples, Inc.*, 932 F. Supp. 2d at 40-41 (holding that "shipping data obtained from reports published by PIERS Global Intelligence Solutions ('PIERS'), a company which 'compiles manifest information submitted to Customs by all shippers'" was public). Finally, "ITC reports qualify as administrative reports within the meaning of the FCA." *Staples*, 773 F.3d at 87. Indeed, manifest information and reports of imports are made public by the CBP itself. 19 C.F.R. §§ 103.31(a) & (e).

Given this, the Complaint should be dismissed under the public disclosure bar.

### 2.   Relator Does Not Fall Within The Exceptions To The Public Disclosure Bar.

An exception to the public disclosure bar exists if the relator is the "original source" of the information. A relator is an original source if the relator: (1) voluntarily disclosed the information in question to the government prior to public disclosure; or (2) has independent first-hand knowledge that materially adds to the publicly available information. 31 U.S.C. § 3730(e)(4)(B).

Relator does not fall within the first exception. The information "disclosed" to the government was in the public domain prior to Relator's use of that information to make the claims here and in the 2016 EAPA filing with the CBP. That is proven by the fact that Relator actually used the public information to make his assertions here and in the 2016 EAPA filing. *See* Section III, A; *see also Staples*, 773 F.3d at 86-87.

Relator does not qualify for the independent knowledge exception to the public

---

[9] Although "news media" is not defined in the FCA, it is widely acknowledged that the term has a broad sweep. *See, e.g.*, *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014) (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011)).

1   disclosure bar either.  Independent knowledge must be "firsthand knowledge," obtained "through

2   [relator's] own labor unmediated by anything else," *i.e.*, not the information in the public.

3   *Prather*, 847 F.3d at 1104.  It must also be "qualitatively different from information already

4   discovered and not merely the product and outgrowth of publicly disclosed information."  *United*

5   *States v. Univ. of Phoenix*, No. 2:10-CV-02478-MCE-KJ, 2014 WL 3689764, at *9 (E.D. Cal.

6   July 24, 2014) (internal quotation marks and citation omitted).  Finally, a relator is not deemed to

7   have independent knowledge merely because the relator has some ability to recognize the legal

8   consequences of the publicly disclosed information.  *Prather*, 847 F.3d at 1104.

9          Here, Relator does not purport to add anything that was not already publicly disclosed.

10  His allegations support that fact.  The allegations relevant to the charge that NEXTracker has

11  imported and is importing items subject to AD/CVD orders are based on "information and belief"

12  as confirmed by "public records."  Compl. ¶¶ 34, 35, 42.  In other words, by Relator's own

13  allegations, the public records and his information and belief are co-extensive.

14         Relator adds nothing that these public records do not supply except a mathematical

15  calculation derived from "public import data," and "publicly-available ship manifest

16  information," Compl. ¶ 42, which Relator uses to then calculate an amount allegedly owed.

17  Compl. ¶¶ 44-45.  That is not sufficient for Relator to be considered to have independent

18  knowledge.  *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 59 (1st Cir. 2009)

19  (characterizing the argument that a relator's expertise gave relator unique insight into the fraud as

20  "whistling past the graveyard"); *United States ex rel. Alcohol Found., Inc. v. Kalmanovitz*

21  *Charitable Found., Inc.*, 186 F. Supp. 2d 458, 463 (S.D.N.Y.), *aff'd*, 53 F. App'x 153 (2d Cir.

22  2002) (rejecting argument that relator's use of expertise to create compilation of public

23  information transformed relator into an "original source"); *Staples, Inc.*, 932 F. Supp. 2d at 41

24  (noting that a relator is not an original source "simply because he conducted some collateral

25  research and had background knowledge that allowed him to understand the significance of

26  publicly disclosed information") (citation omitted).

27         Accordingly, the public disclosure bar precludes Relator from bringing his claims, and his

28  Complaint should therefore be dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    RELATOR'S COMPLAINT SHOULD BE DISMISSED UNDER RULES 8, 9(B) AND 12(B)(6) FOR FAILURE TO STATE A CLAIM.**

**A.    Relator's Complaint Fails to Meet Rule 9(b) Pleading Standards.**

Claims under the FCA, including reverse FCA claims, are subject to Rule 9(b)'s heightened pleading standard. *United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Rule 9(b) imposes this requirement "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation omitted).  Generally, then, courts require that a relator specifically allege "the who, what, when, where and how of the misconduct charged."  *General Dynamics C4 Systems*, 637 F.3d at 1055 (citation omitted).

Under this standard, courts require that allegations based on "information and belief" specifically allege, *inter alia*, the facts upon which a plaintiff's information and belief is based. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (noting that even if matters are exclusively in control of defendant "a plaintiff who makes allegations on information and belief must state the factual basis for the belief"); *California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635–36 (N.D. Cal. 1997) (noting same in FCA context); *see also, e.g., United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997) (same).  As to the very crux of Relator's FCA claim, there are no allegations that satisfy this standard.

The crux of the Complaint is that the scope of the AD/CVD orders cover NEXTracker imports and that those products do not fall within any scope exclusion.  Compl. ¶¶ 36, 38. Relator provides no basis for these conclusory allegations except to assert that they are based on "information and belief."  There is no allegation that provides any hint of the basis for the "information and belief" allegations.  They are simply asserted *ipse dixit*, which Rule 9(b) does not allow.  Lacking any valid allegation in this regard, there is literally is no claim.

*Walgreen* is instructive in this regard.  175 F.R.D. at 635–36.  *Walgreen* notes that such

allegations must include factual support, such as the source and reliability of such claims.  *Id.*  In *Walgreen*, the relator at least claimed to have talked to persons about the alleged fraud—there are no such allegations here.  Still, that was not enough because there was no indication that the persons to whom relator spoke knew anything about the alleged fraud.  *Id.*  Also, critically, and what maps on to this case, the heart of the fraud—that Medi-Cal remained unreimbursed—was alleged only on "information and belief."  *Id.*  The court rejected this allegation as insufficient.[10]

For these reasons, the Complaint should be dismissed for failure to satisfy Rule 9(b)'s pleading requirements.

### B.   The Complaint Alleges No Facts from which Scienter can be Inferred, Failing Rule 8 Pleading Requirements.

The FCA has a scienter requirement.  It is intended to punish knowingly false conduct, *i.e.*, conduct engaged in "with knowledge of the falsity and with intent to deceive."  *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) (citation omitted).  This is true whether the claims are brought under 31 U.S.C. § 3729(a)(1)(A), which prohibits the knowing presentment of a false claim, or 31 U.S.C. § 3729(a)(1)(G), which prohibits the knowing concealment of an obligation to pay the government.  *See General Dynamics C4 Systems*, 637 F.3d at 1056; *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 335-36 (9th Cir. 2017).

What the FCA is *not* intended to do is hold a defendant liable for acts engaged in without the necessary scienter.  It is not meant to "punish honest mistakes or incorrect claims submitted through mere negligence."  *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998).  It is not intended to reach "differences in interpretations."  *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011).  Nor is it intended to bring within its ambit a "breach of contract, or violation of regulations or law . . ." unless a defendant has acted with the appropriate scienter.  *Univ. of Phoenix*, 461 F.3d at 1171.

Against this backdrop, Relator's allegations fail.  While allegations of scienter do not need to be alleged with specificity, a complaint must still plead sufficient facts that give rise to a

---

[10] Relator claims that "discovery will reveal and confirm the truth of these allegations. . . ."  Compl. ¶ 49.  However, Rule 9 is intended to prevent that type of tactic.  *See, e.g.*, *United Healthcare Ins. Co.*, 848 F.3d at 1180.

MOTION TO DISMISS COMPLAINT
CASE NO.:  CV-17-2048 WHA

1    plausible inference of scienter.  *Corinthian Colleges*, 655 F.3d at 997; *United States v. Honeywell*

2    *Int'l, Inc.*, LA CV12-02214 JAK (JCGx), 2014 WL 12579803, at *3-4 (C.D. Cal. Jan. 24, 2014).

3    Here there are no such allegations.

4         Relator simply makes the conclusory allegation that NEXTracker "knowingly, but falsely,

5    designated its imported good as 'non-subject'" to antidumping and countervailing duties.  Compl.

6    ¶ 36.  Missing entirely is any surrounding factual basis from which this Court can draw an

7    inference that this allegation has a colorable basis, *i.e.*, that NEXTracker engaged in this conduct

8    with the scienter required by the FCA.  Merely alleging that defendants acted falsely does not

9    satisfy this standard.  *Corinthian Colleges*, 655 F.3d at 997 (granting motion to dismiss); *United*

10   *States ex rel. Modglin v. DJO Global Inc.,* 114 F. Supp. 3d 993, 1024 (C.D. Cal. 2015), *aff'd sub*

11   *nom. United States v. DJO Global, Inc.,* 678 F. App'x 594 (9th Cir. 2017) (same).

12        This is all the more true when the defendant is a corporation.  A complaint may not rely

13   on a "collective scienter theory," one which simply alleges that a corporation has acted with the

14   requisite scienter.  *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995)

15   (fraud claim); *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274-75 (D.C. Cir.

16   2010) (FCA claim); *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352

17   F.3d 908, 917-18 (4th Cir. 2003) (FCA claim).  Instead, a relator "must sufficiently plead that at

18   least one of the corporation's officers had the requisite scienter at the time they made the

19   allegedly misleading statements."  *United States v. Scan Health Plan*, CV 09-5013-JFW (JEMx),

20   2017 WL 4564722, at *5 (N.D. Cal. Oct. 5, 2017) (quoting *In re Int'l Rectifier Corp. Litig.*, No.

21   CV 07-02544-JFW (VBKx), 2008 WL 4555794, at * 21 (C.D. Cal. May 23, 2008)).  This is so

22   because allowing such allegations to go forward allows a relator "to prove scienter by piecing

23   together scraps of 'innocent' knowledge held by various corporate officials, even if those officials

24   never had contact with each other or knew what others were doing in connection with a claim

25   seeking government funds."  *Sci. Applications Int'l Corp.*, 626 F.3d at 1275 (quoting

26   *Westinghouse Savannah River Co.*, 352 F.3d at 918 n. 9).

27        Relator has made no factual allegations even suggesting that NEXTracker engaged in

28   conduct "with knowledge of the falsity and with intent to deceive."  *Univ. of Phoenix*, 461 F.3d at

MOTION TO DISMISS COMPLAINT
CASE NO.:  CV-17-2048 WHA

117 (citation omitted).

The Complaint should be dismissed for this reason as well.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD STAY RELATOR'S COMPLAINT UNDER THE PRIMARY JURISDICTION DOCTRINE.

In the alternative, the Court should stay this case pursuant to the primary jurisdiction doctrine.  Under this doctrine, the Court may issue a stay if there is: "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (citation omitted).

This doctrine has been applied to stay FCA claims. *United States v. Dan Caputo Co.*, 152 F.3d 1060 (9th Cir. 1998).  And it should be applied here.

Presently pending before the DOC is NEXTracker's request for a ruling confirming that Torque Tubes fall outside of the scope of AD/CVD orders A-570-910 and C-570-911.  The antidumping and countervailing duty laws make the DOC, through the scope ruling process, the definitive arbiter of whether an antidumping or countervailing duty order covers any given merchandise.  19 C.F.R. § 351.225.

These circumstances counsel for a stay.  *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1089 (9th Cir. 2006) ("Both this court and the Supreme Court have held that the interpretation of an agency order issued pursuant to the agency's congressionally granted regulatory authority falls within the agency's primary jurisdiction where the order reflects policy concerns or issues requiring uniform resolution."); *see also United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 67 (1956) ("Do the factors which make for high costs and therefore high rates on incendiary bombs also call for a high rate on steel casings filled with napalm gel?  To answer that question there must be close familiarity with these factors. Such familiarity is possessed not by the courts but by the agency which had the exclusive power to pass on the rate in the first instance. And, on the other hand, to decide the question of the scope of this tariff without consideration of the factors and purposes underlying the terminology employed would make the

1    process of adjudication little more than an exercise in semantics.").

2            Additionally, the DOC's decision could well be dispositive of this case.  If the DOC

3    agrees that Torque Tubes fall outside of the scope of the AD/CVD orders this case is over.[11]

4            Finally, while it should not matter, but in case it does: (1) NEXTracker filed its scope

5    request with the DOC before the unsealing of the Complaint.  Therefore, NEXTracker did not file

6    its request in hopes of staying the Complaint.  (2) As noted, Relator, on behalf of his client

7    Wheatland, has filed papers with the DOC.  So, to the extent the Court is concerned that

8    NEXTracker is muzzling him, clearly that is not the case.

9                              **CONCLUSION**

10           For the reasons set forth above, NEXTracker respectfully respects that the Court dismiss

11   Relator's Complaint, or, in the alternative, stay this case pending the conclusion of the scope

12   review by the U.S. Department of Commerce.

13

14   Dated: March 12, 2018                    ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16                                          By:   _____*/s/ Warrington Parker*_____
                                                    WARRINGTON PARKER

17                                               Attorneys for Defendant
18                                                  NEXTracker, Inc.

19

20

21

22

23

24

25

26

27   _____
[11] Even should the DOC decide against NEXTracker, and assuming the Complaint can survive a
28   motion to dismiss, any FCA claim would need to be adjudicated.  At the least, Relator would
     need to prove scienter.